1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JESUS ROCHA,

Plaintiff,

v.

JW PRODUCE, INC., et al.,

Defendants.

Case No.  21-cv-09194-VKD

**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE; REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 10

Plaintiff Jesus Rocha filed this action against defendants JW Produce, Inc. ("JW Produce") and its alleged owner and alter ego, Veronica Martinez (also known as Veronica Martinez Vasquez), to enforce a $27,223.00 reparation award issued by the Secretary of the U.S. Department of Agriculture ("USDA").  Dkt. No. 1.  Defendants failed to appear and the Clerk of the Court entered their default.  Dkt. No. 22.

Mr. Rocha now moves for default judgment against both defendants.  Dkt. No. 10.  This Court heard the matter on April 5, 2022 and directed Mr. Rocha to submit further briefing, which he timely filed on April 19, 2022.  Dkt. Nos. 13, 14, 15.

Mr. Rocha has consented to proceed before a magistrate judge.  Dkt. No. 6.  However, defendants have not appeared and are in default.  This Court therefore does not have the consent of all parties.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *Williams v. King*, 875 F.3d 500 (9th Cir. 2017).  Accordingly, the Court directs the Clerk of the Court to reassign this action to a district judge, with the following report and recommendation that Mr. Rocha's motion for default judgment be granted.

United States District Court
Northern District of California

**REPORT AND RECOMMENDATION**

## I.     BACKGROUND

According to the complaint, Mr. Rocha entered into an oral contract in which JW Produce agreed to purchase 57 shipments of fresh strawberries at $9.00 per box.  Dkt. No. 1 ¶¶ 12, 13.  Mr. Rocha alleges that between April 27, 2016 and September 14, 2016, he sold and delivered 57 shipments of fresh strawberries to JW Produce.  JW Produce reportedly received and accepted all shipments, but has not fully paid for the strawberries.  *Id.*

On July 3, 2017, Mr. Rocha filed an administrative reparation complaint with the USDA. *Id.* ¶ 15.  On August 31, 2018, the USDA entered an order for a reparation award in Mr. Rocha's favor, and against JW Produce in the amount of $32,745.00, with interest at 2.44% per annum from October 1, 2016, until paid, plus $500 that Mr. Rocha paid to file his reparations complaint. *Id.* ¶ 16, Ex. A.  The USDA determined that Ms. Martinez Vasquez is an individual responsibly connected to JW Produce as an owner, partner, manager, officer, director and/or stockholder.  *Id.* at ECF 9.  The reparation order gave JW Produce 30 days, or until September 30, 2018, to make the reparation.  *Id.* at ECF 26.

On September 25, 2018, JW Produce petitioned the USDA for reconsideration.  *Id.* ¶ 17. On November 28, 2018, the USDA granted JW Produce's petition in part and amended its August 31, 2018 order to exclude damages for untimely claims and to reflect that JW Produce owed Mr. Rocha $27,223.00 for the strawberries.  *Id.* ¶ 18, Ex. B at ECF 33-34.  The November 28, 2018 reparation order directed JW Produce to pay Mr. Rocha $27,223.00, with interest at 2.44% per annum from October 1, 2016, until paid, plus $500 that Mr. Rocha paid to file his reparations complaint.  *Id.* at ECF 34.  The reparation order gave JW Produce 30 days, or until December 28, 2018, to make the reparation.  *Id.*

Mr. Rocha claims that JW Produce has not paid the reparation.  *Id.* ¶ 19.  He filed the present action on November 29, 2021, asserting two claims for relief:  (1) enforcement of the November 28, 2018 reparation order pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499g(b) and (2) action on account for payment of the $27,223 ordered reparation.  *Id.* ¶¶ 11-27.  The complaint seeks judgment of $27,223.00, as well as pre- and post-

United States District Court
Northern District of California

1  judgment interest, attorneys' fees and costs.  *Id.* at ECF 7.

2          Although the record indicates that defendants were served with process (Dkt. No. 7-1; Dkt.

3  No. 15, Ex. 2), defendants did not respond to the complaint or otherwise appear in the action.  At

4  Mr. Rocha's request, the Clerk of the Court entered default against both defendants on January 28,

5  2022.  Dkt. No. 8.

6          Defendants have not responded to Mr. Rocha's motion for default judgment, and briefing

7  is closed.  *See* Civil L.R. 7-3.  For the reasons discussed below, this Court recommends that Mr.

8  Rocha's motion for default judgment be granted.

9  **II.      LEGAL STANDARD**

10         Default may be entered against a party who fails to plead or otherwise defend an action.

11 Fed. R. Civ. P. 55(a).  After entry of default, a court may, in its discretion, enter default judgment.

12 Fed. R. Civ. P. 55(b)(2);[1] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding

13 whether to enter default judgment, a court may consider the following factors: (1) the possibility

14 of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of

15 the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute

16 concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong

17 policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v.*

18 *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual

19 allegations in the plaintiff's complaint are taken as true, except those relating to damages.

20 *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  The court may hold a

21 hearing to conduct an accounting, determine the amount of damages, establish the truth of any

22 allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

23 **III.     DISCUSSION**

24         **A.      Subject Matter Jurisdiction and Personal Jurisdiction**

25         "When entry of judgment is sought against a party who has failed to plead or otherwise

26

27 [1] "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared."  Fed. R. Civ. P. 55(b)(2).  There are no such issues presented here.

28

1  defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

2  matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has federal

3  question jurisdiction pursuant to 28 U.S.C. § 1331 over Mr. Rocha's PACA claim. Because his

4  common law claim arises out of the same factual allegations as the PACA claim, the Court

5  exercises supplemental jurisdiction over that claim. *See* 28 U.S.C. § 1367(a).

6       The Court also has personal jurisdiction over JW Produce and Ms. Martinez Vasquez.

7  According to the complaint, JW Produce is a Delaware corporation with its principal place of

8  business in Watsonville, California. Dkt. No. 1 ¶ 4. Ms. Martinez Vasquez allegedly is JW

9  Produce's chief executive officer, secretary, chief financial officer and/or director and resides in

10 Watsonville, California. *Id.* ¶ 5. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an

11 individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile .

12 . . With respect to a corporation, the place of incorporation and principal place of business are

13 paradig[m] . . . bases for general jurisdiction.") (internal quotations and citation omitted)

14 (alteration in original); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

15 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying

16 controversy, principally, activity or an occurrence that takes place in the forum State and is

17 therefore subject to the State's regulation.").

18       **B.     Service of Process**

19        "A federal court does not have jurisdiction over a defendant unless the defendant has been

20 served properly under Fed. R. Civ. P. 4." *Rain Design, Inc. v. Spinido, Inc.*, No. 17-cv-03681-

21 JSC, 2018 WL 7269019, at *2 (N.D. Cal. Nov. 15, 2018) (quoting *Direct Mail Specialists, Inc. v.*

22 *Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)). Here, the record

23 demonstrates that both defendants have been served.

24       Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, an individual defendant may

25 be served by: (1) delivering a copy of the summons and complaint to the individual personally;

26 (2) leaving a copy of the summons and complaint at the individual's dwelling or usual place of

27 abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of

28 the summons and complaint to an agent authorized by appointment or law to receive service of

4

1  process.  Fed. R. Civ. P. 4(e)(2).  Alternatively, an individual defendant may be served with

2  process pursuant to the law of the state where the district court is located.  Fed. R. Civ. P. 4(e)(1).

3  Under California law, an individual defendant may be served by several means, including personal

4  delivery of the summons and complaint to the individual or the individual's authorized agent.  Cal.

5  Cal. Code Civ. Proc. §§ 415.10, 416.90.  When "a copy of the summons and complaint cannot

6  with reasonable diligence be personally delivered to the person to be served," California law

7  permits substituted service by (1) "leaving a copy of the summons and complaint at the person's

8  dwelling house, usual place of abode, usual place of business, or usual mailing address . . . in the

9  presence of a competent member of the household or a person apparently in charge of his or her

10  office, place of business, or usual mailing address . . . at least 18 years of age, who shall be

11  informed of the contents thereof" and (2) "thereafter mailing a copy of the summons and of the

12  complaint by first-class mail, postage prepaid to the person to be served at the place where a copy

13  of the summons and complaint were left."  Cal. Code Civ. Proc. § 415.20(b).  "Service of

14  summons in this manner is deemed complete on the 10th day after the mailing."  *Id*.

15      Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic

16  corporation may be served:

17          by delivering a copy of the summons and of the complaint to an
           officer, a managing or general agent, or any other agent authorized
18          by appointment or by law to receive service of process and—if the
           agent is one authorized by statute and the statute so requires—by
19          also mailing a copy of each to the defendant.

20  Fed. R. Civ. P. 4(h)(1)(B).  Alternatively, Rule 4 provides that service on a corporation

21  may be made by "following state law for serving a summons in an action brought in courts of

22  general jurisdiction in the state where the district court is located or where service is made."  Fed.

23  R. Civ. P. 4(e)(1), (h)(1)(A).  Under California law, a corporation may be served by "delivering a

24  copy of the summons and the complaint . . . [t]o the person designated as agent for service of

25  process" or "[t]o the president, chief executive officer, or other head of a corporation, a vice

26  president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief

27  financial officer, a general manager or person authorized by the corporation to receive service of

28  process."  Cal. Code Civ. Proc. § 416.10(a), (b).  In lieu of personal delivery, California law

United States District Court
Northern District of California

5

permits substituted service on a person to be served under section 416.10 by (1) "leaving a copy of the summons and the complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof" and (2) "thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. Proc. § 415.20(a). "Service of a summons in this manner is deemed complete on the 10th day after the mailing." *Id.*

Mr. Rocha contends that Ms. Martinez Vasquez properly was served, in her individual capacity and as JW Produce's agent for service of process. The record indicates that the process server left the complaint and summons with Raul Herrera at an address on East Beach Street in Watsonville. Dkt. No. 7-1 at ECF 4-5. According to the process server, Mr. Herrera stated that he used to work for the defendants and had Ms. Martinez Vasquez's permission to accept service of process for her and JW Produce. *Id.* Mr. Herrera further advised that Ms. Martinez Vasquez was living in a recreational vehicle ("RV") at an unknown address in Castroville, but still received and regularly picked up her mail at the East Beach Street address. Mr. Herrera declined to call Ms. Martinez Vasquez, to give the process server her phone number, or to provide further details about the RV in which Ms. Martinez Vasquez allegedly lived. Instead, Mr. Herrera told the process server to leave the documents with him and that he would give them to Ms. Martinez Vasquez. *Id.* The process server left the complaint, summons and other documents for both defendants with Mr. Herrera on December 1, 2021 and then mailed a copy of the papers to the same East Beach Street address. *Id.*; *see also* Dkt. No. 15, Ex. 2. The process server avers that those mailings have not been returned as undeliverable. Dkt. No. 15, Ex. 2 ¶ 8.

Generally, personal service on an individual must first be attempted with "reasonable diligence" before a party can resort to substituted service. Cal. Code Civ. Proc. § 415.20(b). California courts have held that usually "two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." *Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1391-92 (1992). Additionally, "[s]ervice must be made upon a person whose relationship with the person to be served makes it more likely than not that they will deliver process to the named party." *Id.* at 1393 (internal

6

United States District Court
Northern District of California

1   quotations and citation omitted).  However, each case must be judged on its own facts, and no

2   "single formula nor mode of search can be said to constitute due diligence in every case."  *Falco v.*

3   *Nissan N. Am., Inc.*, 987 F. Supp. 2d 1071, 1080 (C.D. Cal. 2013) (internal quotations and

4   citations omitted).  Ultimately, "'the question of service should be resolved by considering each

5   situation from a practical standpoint.'"  *Bein*, 6 Cal. App. 4th at 1392 (quoting *Pasadena Medi-*

6   *Center Assocs. v. Super. Ct.*, 9 Cal. 3d 773, 778 (1973)).

7          In this case, the process server apparently made only one attempt at personal service at the

8   East Beach Street address before resorting to substituted service.  Mr. Rocha's counsel, Andrea

9   Avila, avers that prior to filing this action and sending the complaint and summons out for service,

10  her office investigated several addresses associated with JW Produce and Ms. Martinez Vasquez,

11  gleaned from records on file with the California Secretary of State, JW Produce's PACA license,

12  and Santa Cruz County property records.  According to Ms. Avila, the Secretary of State's records

13  identify "Veronica Vasquez" as JW Produce's chief executive officer, secretary, chief financial

14  officer, and agent for service of process, and provide an address on Lincoln Street in Watsonville.

15  Dkt. No. 15, Ex. 1, ¶ 2, Ex. A.  Ms. Avila says that her investigation revealed that the Lincoln

16  street property is a residential address, with no associated businesses and no indication that Ms.

17  Vasquez is an owner or occupant of that property.  *Id.* ¶ 3.  Ms. Avila further avers that the

18  Secretary of State's records identify a Salinas Road address as JW Produce's principal business

19  location.  *Id.* ¶ 4, Ex. A.  Her investigation found three businesses associated with that address,

20  one of which—JW Farms Organics—Ms. Avila says "is likely affiliated with JW Produce, but is a

21  different entity," as indicated by records on file with the California Secretary of State for JW

22  Farms Organic, Inc.  *Id.* ¶ 4, Ex. B.[2]  Ms. Avila notes that JW Produce's PACA license lists the

23  Salinas Road address as its business address and a web address "www.jwfarms.com."  *Id.* ¶ 5, Ex.

24  C.  For the reasons discussed above, Ms. Avila believes that the Salinas Road address is not a

25  valid service address for the defendants, and a review of the listed website "failed to yield a good

26

27  _____

28  [2] Ms. Avila states that the other two businesses associated with the Salinas Road address are
    Marinovich Cold Storage and Lassen Canyon Nursery.  Dkt. No. 15, Ex. 1 ¶ 4.

1   service address." *Id.* ¶ 5.  Finally, Ms. Avila points out that JW Produce's PACA license

2   identifies the East Beach Street address as the company's mailing address and identifies Ms.

3   Martinez Vasquez as the company's reported principal.  Ms. Avila's investigation of property

4   records revealed that Ms. Martinez Vasquez owns the property at the East Beach Street address.

5   *Id.* second ¶ 5, Exs. C, D.[3]

6        Based on the results of this investigation, counsel determined that Ms. Martinez Vasquez is

7   JW Produce's agent for service of process and that the East Beach Street address is the only likely

8   valid service address for her as agent.  *See* Dkt. No. 15, Ex. 1.  Additionally, the process server

9   avers that prior to service, he confirmed through various online databases that the East Beach

10  Street address is identified as Ms. Martinez Vasquez's current residence.  *See id.*, Ex. 2.  As noted

11  above, Mr. Herrera agreed to accept service for defendants, but otherwise refused to provide any

12  additional information regarding Ms. Martinez Vasquez's location.  Under the circumstances

13  presented here, this Court finds that a copy of the summons and complaint could not with

14  reasonable diligence be personally delivered to the defendants, and that they properly were served

15  via substituted service.

16        **C.**   ***Eitel* Factors**

17        For the reasons discussed below, the *Eitel* factors weigh in favor of entering default

18  judgment.

19              **1.**   **The possibility of prejudice to Mr. Rocha**

20        The first *Eitel* factor considers whether Mr. Rocha would suffer prejudice if default

21  judgment is not entered.  *Eitel*, 782 F.2d at 1471.  Unless default judgment is entered, Mr. Rocha

22  will have no other recourse for recovery against defendants, as he has already delivered produce to

23  JW Produce for which it has not been paid.  *See, e.g, Tom Ver LLC v. Organic All, Inc.,* No. 13-

24  CV-03506-LHK, 2015 WL 6957483, at *7 (N.D. Cal. Nov. 11, 2015) (finding prejudice

25  consideration favored default judgment where PACA plaintiff would otherwise not obtain

26  payment to which it was entitled for produce already delivered to defendant).  The possibility of

27  _____

28  [3] There are two paragraphs numbered "5" in Ms. Avila's declaration.  The Court refers here to the
    second paragraph number 5.

United States District Court
Northern District of California

1  prejudice to Mr. Rocha therefore weighs in favor of granting default judgment.

2      **2.**    **The merits of Mr. Rocha's claims and the sufficiency of the complaint**

3      The second and third *Eitel* factors concern the merits of Mr. Rocha's claims and the

4  sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. The Ninth Circuit has suggested that

5  together, these two factors require that plaintiff's allegations "state a claim on which the [plaintiff]

6  may recover." *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (citing

7  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). Mr. Rocha's motion for default

8  judgment ostensibly focuses on his first claim for enforcement of the USDA's reparation order

9  under PACA, 7 U.S.C. § 499b(g). *See* Dkt. No. 10 at 4. Accordingly, the Court's analysis focuses

10  solely on that claim.[4]

11      PACA § 499g provides: "If any commission merchant, dealer, or broker does not pay the

12  reparation award within the time specified in the [USDA]'s order, the complainant . . . may within

13  three years of the date of the order file in the district court of the United States for the district in

14  which he resides or in which is located the principal place of business of the commission

15  merchant, dealer, or broker . . . . a petition setting forth briefly the causes for which he claims

16  damages and the order of the [USDA] in the premises." 7 U.S.C. § 499g(b). Thus, to bring an

17  enforcement action under this provision, a plaintiff must establish that (1) defendant is a

18  commission merchant, dealer, or broker, (2) the USDA issued a reparation award in favor of

19  plaintiff and against defendant based on defendant's violations of PACA, and (3) defendant has

20  not paid the reparation award within the time specified in the reparation order issued by the

21  USDA. *See Corona Fruits and Veggies, Inc. v. MLC Berries, Inc.*, No. 2:20-cv-02525-SB-JPR,

22  2020 WL 9422353, at *3 (C.D. Cal. Oct. 20, 2020); *Western Veg-Produce, Inc. v. The Lexy

23  Group*, No. 2:18-cv-00180-ODW (AGRx), 2018 WL 1804689, at *4 (C.D. Cal. Apr. 16, 2018).

24  Further, a plaintiff must file this enforcement action within three years of the date of the order.

25  7 U.S.C. § 499g(b).

26

27  _____

28  [4] As pled, Mr. Rocha's second claim for "action on account," appears to be an alternate means of seeking the same relief sought by his first claim for enforcement of the reparation order. *See* Dkt. No. 1 ¶ 27.

1    Here, Mr. Rocha alleges that JW Produce is a dealer and commission merchant subject to

2    the PACA.  Dkt. No. 1 ¶ 4.  He further alleges that Ms. Martinez Vasquez is JW Produce's alter

3    ego and "a responsible owner, sole or majority shareholder, officer" of JW Produce.  *Id*. ¶ 5.

4    According to the complaint, the USDA's November 28, 2018 reparation order issued in favor of

5    Mr. Rocha and against JW Produce in the amount of $27,223.00, plus interest and $500 for the

6    amount Mr. Rocha paid to file his administrative complaint.  *Id*. ¶ 18 and Ex. B.  Mr. Rocha also

7    alleges that JW Produce has not paid the reparation award within the 30 days allotted from the

8    entry of the USDA's order.  *Id.* ¶ 19.  Mr. Rocha timely filed the present action on November 29,

9    2021.[5]

10    As noted, Mr. Rocha's factual allegations are accepted as true by virtue of defendants'

11    default.  *TeleVideo*, 826 F.2d at 917-18.  Moreover, the PACA statute provides that "the findings

12    and orders of the [USDA] shall be prima-facie evidence of the facts therein stated."  7 U.S.C.

13    § 499g(b).  The reparation order specifically finds that JW Produce is responsible for payment to

14    Mr. Rocha for the shipments of strawberries, interest, and costs for filing a complaint with the

15    USDA.  Additionally, the USDA determined that Ms. Martinez Vasquez is an individual

16    responsibly connected to JW Produce as an owner, partner, manager, officer, director and/or

17    stockholder.  Dkt. No. 1, Ex. B; Dkt. No. 10-1, Ex. B.  Accordingly, the Court finds that Mr.

18    Rocha properly has stated an enforcement claim under 7 U.S.C. § 499g(b) upon which he may

19    recover.

20    The second and third *Eitel* factors therefore weigh in favor of default judgment.

21    ### 3.    The amount of money at stake

22    The fourth *Eitel* factor requires the Court to consider the amount of money at stake in

23    relation to the alleged misconduct.  *Eitel*, 782 F.2d at 1471.  When the sum of money at stake is

24    tailored to the specific misconduct of the defendant, default judgment may be appropriate.  *See Bd.*

25    *of Trustees of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mechanical, Inc.*,

26

27    _____

[5] The deadline for filing the present action, November 28, 2021, was a Sunday, giving Mr. Rocha until Monday, November 29, 2021 to file his complaint.  Fed. R. Civ. P. 6(a)(1)(C).

28

United States District Court
Northern District of California

1    No. C-10-2212 EMC, 2011 WL 2600898, at *2-3 (N.D. Cal. June 20, 2011) (amount of damages

2    sought were appropriate as they were supported by adequate evidence provided by the plaintiffs).

3    Here, Mr. Rocha requests judgment in an amount equal to the USDA's reparation award, which

4    JW Produce has not yet paid.  This award, which includes interest plus $500, reflects the actual

5    damage to Mr. Rocha and therefore is proportional to the misconduct alleged.  Dkt. No. 1.  This

6    factor weighs in favor default judgment in the amount claimed.

**4.    The possibility of dispute concerning material facts and whether defendant's default was due to excusable neglect**

9    Under the fifth and sixth *Eitel* factors, the Court considers whether there is a potential for

10   factual disputes and whether defendant's failure to respond was likely due to excusable neglect.

11   *Eitel*, 782 F.2d at 1471-72.  Because Mr. Rocha plausibly pleads his claim for enforcement of the

12   USDA's reparation order, and because all allegations are deemed true, there is nothing before the

13   Court that indicates a possibility of a dispute as to material facts.  Moreover, there is no indication

14   that defendants' default was due to excusable neglect.  The record reflects that defendants were

15   served with notice of this action in December 2021.  Dkt. No. 7-1; Dkt. No. 15, Ex. 2.  Notice of

16   Mr. Rocha's motion for default judgment was served on defendants by mail at the East Beach

17   Street address identified as Ms. Martinez Vasquez's current residence and mailing address.  Dkt.

18   No. 10-3; Fed. R. Civ. P. 5(b)(2)(C).  As noted above, the Court has received no response from the

19   defendants.

20   This factor weighs in favor of default judgment.

**5.    The strong policy favoring decisions on the merits**

22   The seventh *Eitel* factor requires the Court to consider the strong policy favoring decisions

23   on the merits.  *Eitel*, 782 F.2d at 1472.  Although default judgment is disfavored, Rule 55(b) of the

24   Federal Rule of Civil Procedure permits entry of default judgment where a defendant refuses to

25   participate in the litigation.  *See, e.g., Kloepping*, 1996 WL 75314 at *3.

26   While the Court prefers to decide matters on the merits, defendants' failure to participate in

27   this litigation makes that impossible.  Default judgment against them is Mr. Rocha's only

28   recourse.  *See United States v. Roof Guard Roofing Co., Inc.*, No. 17-cv-02592-NC, 2017 WL

United States District Court
Northern District of California

1 | 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is
2 | rendered futile, default judgment is the appropriate outcome.").

3 | This factor also weighs in favor of default judgment.

4 | **D.    Requested Judgment**

5 | Because this Court concludes that default judgment is warranted, it now considers Mr.
6 | Rocha's request for relief.  "To recover damages after seeking a default judgment, a plaintiff must
7 | prove the relief it seeks through testimony or written affidavit."  *Bd. of Tr. of the Laborers Health*
8 | *& Welfare Tr. Fund for N. Cal. v. A & B. Bldg. Maint. Co. Inc.*, No. C 13-00731 WHA, 2013 WL
9 | 5693728, at *4 (N.D. Cal. Oct. 17, 2013).

10 | As an initial matter, the Court notes that Mr. Rocha has already elected to obtain relief by
11 | complaint to the USDA, *see* Dkt. No. 1, Exs. A and B, and now seeks to enforce the USDA's
12 | November 28, 2018 reparation order.  That reparation award includes the cost of the unpaid
13 | produce shipments ($27,223.00), interest on that sum (i.e., 2.44% per annum from October 1,
14 | 2016 until paid) and the $500 fee Mr. Rocha paid to file his complaint with the USDA.  Dkt. No.
15 | 1, Ex. B; Dkt. No. 10-1, Ex. B.  Because the reparation order included in Mr. Rocha's complaint
16 | serves as prima-facie evidence of the USDA's findings, 7 U.S.C. § 499g(b), and no evidence has
17 | been provided in rebuttal, the Court adopts the USDA's findings as to damages.  Accordingly, the
18 | Court finds that Mr. Rocha has established entitlement to an award as follows:  **$27,223.00**, plus
19 | the administrative fee of **$500**.  Defendants shall also pay interest on the amount of $27,223.00 at
20 | the rate of 2.44% per year from October 1, 2016, until paid.  Interest on $27,223.00, at a daily rate
21 | of $1.82, from October 1, 2016 through April 26, 2022 (i.e., 2,034 days) is **$3,701.88**.

22 | The Court concludes that through April 26, 2022, Mr. Rocha is owed a total of **$27,223.00**,
23 | plus the **$500** administrative fee and **$3,701.88** in interest.

24 | **E.    Attorneys' Fees**

25 | "The statute that allows a plaintiff to enforce a USDA reparation award in district court
26 | also allows the prevailing plaintiff to collect 'a reasonable attorney's fee, to be taxed and collected
27 | as a part of the costs of the suit.'"  *Mission Produce, Inc. v. Organic Alliance*, No. 15-CV-01951-
28 | LHK, 2016 WL 1161988, at *9 (N.D. Cal. Mar. 24, 2016) (quoting 7 U.S.C. § 499g(b)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Whether calculating attorney's fees under California or federal law, courts follow the

2  lodestar approach.  "The most useful starting point for determining the amount of a reasonable fee

3  is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly

4  rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Tex. State*

5  *Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989).  The party seeking an award of

6  fees should submit evidence supporting the hours worked and rates claimed.  *Id.*

7    "In determining a reasonable hourly rate, the district court should be guided by the rate

8  prevailing in the community for similar work performed by attorneys of comparable skill,

9  experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir.

10  1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v.*

11  *Stenson*, 465 U.S. 886, 895 n.11 (1984)).  "Generally, the relevant community is the forum in

12  which the district court sits."  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  The fee

13  applicant has the burden of producing evidence, other than declarations of interested counsel, that

14  the requested rates are in line with those prevailing in the community for similar services by

15  lawyers of reasonably comparable skill, experience and reputation.  *Blum*, 465 U.S. at 896 n.11.

16  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

17  community, and rate determinations in other cases, particularly those setting a rate for the

18  plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *United Steelworkers*

19  *of America v. Phelps Dodge Co*., 896 F.2d 403, 407 (9th Cir. 1990).

20    Mr. Rocha "bears the burden of establishing entitlement to an award and documenting the

21  appropriate hours expended[.]"  *Hensley*, 461 U.S. at 437.  "Where the documentation of hours is

22  inadequate, the district court may reduce the award accordingly."  *Id*. at 433.  A district court

23  should also exclude from the lodestar fee calculation any hours that were not "reasonably

24  expended," such as hours that are excessive, redundant, or otherwise unnecessary.  *See id*. at 433-

25  34; *see also Chalmers*, 796 F.2d at 1210 ("Those hours may be reduced by the court where

26  documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if

27  the hours expended are deemed excessive or otherwise unnecessary.").

28    Mr. Rocha seeks a total of $5,811.00 in fees based on the hourly rates of the following

1    attorneys:  Andrea Avila, partner ($395.00), Jennifer Owens, senior associate attorney ($325.00)

2    and Anais Mora, junior associate attorney ($275.00).  In addition to Ms. Avila's own declaration,

3    Mr. Rocha submits the declaration of attorney Paul Moncrief, an attorney admitted to the

4    California Bar in 1999 and who practices in Salinas, primarily in agricultural law (among other

5    practice areas).  Mr. Moncrief avers that his hourly rate for PACA matters is $450, and that the

6    rates charged by Mr. Rocha's counsel are consistent with those charged by lawyers of reasonably

7    comparable skill, experience and reputation in the Monterey County community in PACA matters.

8    Dkt. No. 10-1 at 2-3; Dkt. No. 15, Ex. 3.  The Court concludes that Mr. Rocha's requested rates

9    for his attorneys are reasonable.

10        Additionally, the Court has reviewed counsel's description of work performed for this

11   litigation and concludes that the requested hours are reasonable.  Dkt. No. 10-1 at ECF 32.

12        This Court finds that Mr. Rocha should be awarded for **$5,811.00** in attorneys' fees.

13   **F.    Costs**

14        The record substantiates Mr. Rocha's request for the $402.00 filing fee (Dkt. No. 1) and

15   $110.00 for the process server's fees (Dkt. No. 7-1), for a total of **$512.00**.

16   **IV.   CONCLUSION**

17        Because not all parties have consented to the undersigned's jurisdiction, IT IS ORDERED

18   that this case be reassigned to a district judge.  For the reasons discussed above, it is

19   RECOMMENDED that Mr. Rocha's motion for default judgment be granted and that he be

20   awarded a total of **$37,747.88** as follows:

21            1.   Damages on his claim for enforcement of the USDA's November 28, 2018

22                 reparation order in the amount of $27,223.00, plus $500 for his administrative fee,

23                 and interest of $3,701.88;

24            2.   Attorneys' fees of $5,811.00; and

25            3.   Costs of $512.00.

26        Mr. Rocha shall promptly serve each defendant with this Report and Recommendation and

27   file a proof of service with the Court.  Any party may serve and file objections to this Report and

28   Recommendation within 14 days after being served.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72;

United States District Court
Northern District of California

14

Civ. LR. 72-3.

     **IT IS SO ORDERED.**

Dated: April 27, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge